UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAREN J. FAASUAMALIE,

           Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

           Defendant.

CASE NO.    C07-5690RJB-KLS

REPORT AND
RECOMMENDATION

Noted for July 18, 2008

      Plaintiff, Karen J. Faasuamalie, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

      Plaintiff currently is 39 years old.[1] Tr. 27.  She has a high school education, completed one year of college and has past work experience as an assistant manager in a fast food restaurant, a cashier in a mini

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

market, a clothes presser, a preparation cook, and a newspaper delivery person. Tr. 24, 72, 80.

Plaintiff filed an application for SSI benefits and an application for disability insurance benefits on August 25, 2003, and September 18, 2003, respectively, alleging disability as of September 15, 1999, due to a bipolar disorder, a mood disorder and anxiety. Tr. 17, 61-63, 71, 317-20.  Her applications were denied initially and on reconsideration. Tr. 27-30, 34, 320-21, 325.  A hearing was held before an administrative law judge ("ALJ") on March 8, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 336-81.

On August 25, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)    at step two, plaintiff had "severe" impairments consisting of posttraumatic stress disorder ("PTSD"), a depressive disorder, a personality disorder, and obesity;

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    at step four, plaintiff had the residual functional capacity to perform work at all exertional levels, with certain non-exertional limitations, which precluded her from performing her past relevant work; and

(5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 17-26.  Plaintiff's request for review was denied by the Appeals Council on November 14, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On December 16, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3).  The administrative record was filed with the Court on March 21, 2008. (Dkt. #9). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a)    the ALJ erred in evaluating the medical evidence in the record;

(b)    the ALJ erred in assessing plaintiff's credibility;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(c)     the ALJ erred in evaluating the lay witness evidence in the record;

(d)     the ALJ erred in assessing plaintiff's residual functional capacity; and

(e)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

1   thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the

2   evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences

3   from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

4        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

5   either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

6   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific

7   and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However,

8   the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler,

9   739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only

10  explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d

11  700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

12       In general, more weight is given to a treating physician's opinion than to the opinions of those who

13  do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

14  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"

15  or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

16  1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

17  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

18  opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion

19  may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id.

20  at 830-31; Tonapetyan, 242 F.3d at 1149.

21       A.    Ms. Varney and Dr. Gutierrez

22        The record contains a progress note dated October 15, 2002, written by Carol Varney, B.S., one of

23  plaintiff's mental health treatment providers, which reads as follows:

24       Karen's case worker from TanFF phoned asking if Ct was ready to gear up towards
         working.  I suggested a slow pace should be alright.  CW says it will start with 2 wks of
25       classes and evaluations leading to no more than P/T coached work.  I though that OK
         [sic].
26

27  Tr. 211.  On January 10, 2003, plaintiff underwent a mental status examination conducted by Antonio

28  Gutierrez, M.D., her treating physician, who made the following comments at the time:

         . . . The client has worked with Carol Varney trying to get ready for work, but it is clear

1    to me that this client is at a point that she would not be able to move forward just
2    because we want her to do so.  So, I told her that I would support her in doing whatever
     she is doing now and nothing else but this. . . .

3    Tr. 196.  Neither of these statements were mentioned by the ALJ in his decision.  Plaintiff argues that this

4    was error.  The undersigned agrees.

5          As noted above, the ALJ must explain why "significant probative evidence has been rejected."

6    Vincent, 739 F.3d at 1394-95; Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610.  The statements made

7    by Ms. Varney and Dr. Gutierrez constitute significant probative evidence.  The undersigned agrees with

8    defendant that neither of their statements clearly indicate an opinion that plaintiff is unable to engage in or

9    sustain competitive employment as asserted by plaintiff.  For example, Ms. Varney merely suggested that

10   plaintiff proceed at a slow pace and agreed that doing no more than part-time coached work would be

11   okay.  She did not actually opine, however, that plaintiff was incapable of working more than that.

12   Nevertheless, the context here is ambiguous enough that the ALJ should have addressed that opinion.

13         Similarly, Dr. Gutierrez did not come out and actually state that he did not feel plaintiff was able to

14   work at that time.  Rather, Dr. Guiterrez was expressing his opinion that plaintiff could not be forced to do

15   more than she was prepared to do.  Again, though, Dr. Gutierrez's statement that he "would support her in

16   doing whatever she" was "doing now and nothing else," creates an issue regarding the extent he did

17   believe that she could maintain employment.  As such, the ALJ should have addressed this issue in his

18   decision as well.  That is, the statements from Ms. Varney and Dr. Gutierrez certainly may be probative as

19   to plaintiff's actual ability to work, thus making it error for the ALJ to not consider them.

20         Defendant argues Dr. Gutierrez treated plaintiff for two years from January 2002 to January 2004,

21   and that by January 2004, both of them reported that her condition had improved.  See Tr. 179.  Defendant

22   asserts the ALJ correctly considered the longitudinal evidence in the record overall regarding her

23   treatment, and thus the January 10, 2003 statements do not in themselves establish that Dr. Gutierrez felt

24   plaintiff had greater mental functional limitations than those found by the ALJ.  However, it is impossible

25   to be sure that this is what the ALJ did given his failure to discuss the statements themselves, which, as

26   discussed above, bear on the very issue of plaintiff's ability to work.  Further, while it is true that

27   improvement was noted in plaintiff's condition, there is no indication to what extent, if any, such

28   improvement actually changed the opinion of Dr. Gutierrez regarding that ability.

REPORT AND RECOMMENDATION
Page - 5

B.    Dr. Clem

On November 22, 2003, Joseph Clem, M.D., performed a psychiatric evaluation of plaintiff, which included a mental status examination. During that examination, plaintiff maintained good eye contact, evidenced normal speech and thought processes, and her thought content was cohesive, coherent and organized, with no delusions or suicidal or homicidal ideation. Tr. 156. She was oriented, her memory was largely intact, and her intelligence was estimated to be average. Id. Plaintiff's concentration also was intact, as evidenced by her ability to follow a three-step command and lack of any difficulty in following conversation. Tr. 157.

Dr. Clem diagnosed plaintiff with a severe bipolar II disorder, without psychotic features, social phobia, a cluster B personality disorder, and a history of marijuana abuse. Id. He also assessed her with a global assessment of functioning ("GAF") score of 51. Regarding plaintiff's prognosis and her ability to function, Dr. Clem opined as follows:

> . . . Based on today's exam findings and current situation this claimant's problems are likely not fully treatable and will not be likely to recover fully particularly within the next 12 months. This claimant will likely not fully improve.
>
> . . . This claimant appears to have intact judgment regarding her overall desires for her future planning and finances; however, she does have some limitations on her mathematical calculation abilities and would likely need help in this area. It does not appear that she has any active substance use issues at this time. The claimant appears to have capabilities in performing some minor simple and repetitive tasks but detailed and complex tasks would prove quite difficult for her.
>
> The claimant would likely not be able to accept instructions from supervisors or interact with coworkers and the public appropriately due to her severe anxiety and mood symptoms. She would likely not perform work activities on a consistent basis even with special or additional supervision. The claimant will likely not maintain regular attendance in the workplace and would likely experience significant interruptions from exacerbations of her bipolar illness. She would likely not deal well with the usual stresses encountered in a competitive workplace environment.

Tr. 157-58.

At step three of the sequential disability evaluation process, the ALJ evaluated Dr. Clem's opinion as follows:

> . . . Dr. Clem found that the claimant experienced difficulty completing tasks and would experience trouble maintaining regular attendance. . . . The medical expert [at the hearing, Bruce Olson, M.D.,] did not find that the record as a whole supported Dr. Clem's opinion regarding concentration, persistence, or pace. The undersigned agrees. Dr. Matthew Comrie, a State Agency physician, also agreed that no more than moderate limitations to concentration, persistence, or pace existed. . . .

Tr. 22.  Later, in discussing the medical evidence in the record concerning plaintiff's residual functional capacity, the ALJ further found that:

> . . . The opinion of Dr. Comrie . . . is consistent with the residual functional capacity profile. . . . The opinion of Dr. Clem with regard to the ability to concentration, persistence, or pace, and the ability to maintain attendance in a place of work, is not. Dr. Clem's opinion has been considered.  The medical expert granted it specific consideration stating that the record did not support Dr. Clem's findings with regard to concentration, persistence, or pace or the ability to regularly attend work.  Indeed, Dr. Clem, himself, described regular activities including shopping, cooking, cleaning, and childcare which would suggest that the claimant could maintain attendance at work. . . . The record does not document significant deficits with regard to concentration, persistence, or pace.  Based upon the above, I give significant weight to the opinion of Dr. Comrie regarding concentration, persistence, or pace and the ability to work without decompensation (attending work regularly), relative to that of Dr. Clem as Dr. Comrie's opinion is more consistent with the record as a whole including medical expert testimony.  I give Dr. Clem's opinion little weight in that regard, but have taken into consideration his observations of signs and his findings which I accord substantial weight. . . .

Tr. 24.

Plaintiff argues these are not valid reasons for rejecting Dr. Clem's findings, and therefore erred in rejecting them.  The undersigned disagrees.  Plaintiff asserts those findings are consistent with the above statements made by Ms. Varney and Dr. Gutierrez.  As discussed above, however, while their statements do create an issue regarding the extent to which they may have believed plaintiff was limited in her ability to perform competitive employment, no express opinions regarding any inability to do so were provided.  Dr. Clem's findings, on the other hand, clearly paint a much more severe picture.

Plaintiff next argues that the ALJ erred in relying on the medical expert's testimony that the record as a whole failed to support Dr. Clem's findings regarding concentration, persistence and pace.  However, there is little medical evidence in the record to support the level of restriction Dr. Clem found.  Indeed, Dr. Clem's mental status examination itself revealed largely unremarkable findings, including an express lack of noted problems with concentration.  See Tr. 156-57.  Plaintiff asserts deference still should have been given to the findings of Dr. Clem because he is a treating physician.  Dr. Clem, though, is not a treating physician, but rather a consulting examining psychiatrist.

In addition, plaintiff asserts the ALJ should have applied the Commissioner's regulatory factors for weighing medical evidence.  See 20 C.F.R. § 404.1527(d); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188.  But it is not at all clear that the ALJ did not do so in this case.  For example, one of the factors to be considered is consistency.  See 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent

1  an opinion is with the record as a whole, the more weight we will give to that opinion."). As discussed

2  above, the ALJ properly noted that Dr. Clem's findings regarding concentration, persistence and pace were

3  not supported by the record as a whole. Accordingly, the undersigned finds no error here.

4  The undersigned further finds that it was not improper for the ALJ to have relied on the testimony

5  of Dr. Olson, the medical expert, or the findings of Dr. Comrie, both of whom are non-examining medical

6  sources. As noted above, while an examining physician's opinion is "entitled to greater weight than the

7  opinion of a nonexamining physician," a non-examining physician's opinion may constitute substantial

8  evidence if "it is consistent with other independent evidence in the record." Lester, 81 F.3d at 830-31;

9  Tonapetyan, 242 F.3d at 1149. Both Dr. Olson and Dr. Comrie noted the unremarkable mental status

10  examination findings obtained by Dr. Clem, and Dr. Olson noted the overall lack of objective medical

11  evidence in the longitudinal record supporting Dr. Clem's opinion regarding plaintiff's mental functional

12  limitations overall. Tr. 162, 366-70. In addition, no other medical opinion source in the record, including

13  Ms. Varney and Dr. Gutierrez, has made similar findings.

14  Plaintiff next takes issue with the ALJ's finding that the activities of daily living she was described

15  as engaging in by Dr. Clem – such as shopping, cooking, cleaning and caring for her children – suggested

16  a greater ability to attend to work than was opined. Such activities when engaged in sporadically and for

17  undetermined periods of time, plaintiff argues, clearly do not establish an ability to perform at the level

18  required for full-time employment. Dr. Clem, however, gave no indication that plaintiff performed these

19  activities sporadically or did so only for short periods of time:

20  . . . She does her own shopping, housework, cooking, and cleaning. . . . She spends
   most of her day caring for her children trying to get them to head start, kindergarten,
21  and elementary school respectively.

22  Tr. 155. Indeed, given that Dr. Clem likely obtained this information directly from plaintiff, it appears that

23  plaintiff herself expressed no such limitations regarding her activities of daily living at the time.

24  Lastly, plaintiff argues that Dr. Clem's opinions are logical, asserting that a person who

25  experiences road rage, paranoia, social withdrawal from others, drowsiness due to medication side effects,

26  and hostility, and who believes she hears others' thoughts, would be expected to have difficulties with

27  concentration, persistence and pace. Many of these symptoms are based on plaintiff's own self-reports and

28  testimony – which, as discussed below, the ALJ properly discredited – and are not supported, or at least

1   are not fully supported, by the objective medical evidence in the record.  In addition, the ALJ did find

2   plaintiff had at least some limitations in this area, as he restricted her to simple, repetitive work.  See Tr.

3   23.

4   II.      The ALJ Properly Assessed Plaintiff's Credibility

5          Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

6   639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

7   F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

8   based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

9   claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as

10  long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

11  (9th Cir. 2001).

12         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for

13  the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must

14  identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;

15  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

16  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

17  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. O'Donnell v.

18  Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

19         In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

20  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

21  testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

22  also may consider a claimant's work record and observations of physicians and other third parties

23  regarding the nature, onset, duration, and frequency of symptoms. Id.

24         The ALJ discounted plaintiff's credibility in part for the following reason:

25         The claimant has a poor work history . . . During the period reflected in the record from
           1984 to 2006, the claimant has worked in only ten of the 22 years.  She has earned
26         above the presumed SGA [substantial gainful activity] level in only four of those years,
           and has had long periods of unemployment even prior to her alleged onset date.
27
28  Tr. 23.  As just noted, this is a valid reason for discounting plaintiff's credibility. Smolen, 80 F.3d at 1284.

    Plaintiff argues that her work record is entirely consistent with her symptoms and limitations.  However, as

1   pointed out by the ALJ, plaintiff also experienced "long periods of unemployment even prior to her alleged

2   onset date" of disability, thereby calling into question her motivation to work overall.  Plaintiff asserts that

3   Dr. Olson noted the presence of "long standing" psychiatric issues dating from her childhood. See Tr. 362,

4   365.  But this does not help plaintiff, as she has claimed disabling symptoms only since September 1999,

5   whereas her poor work record far precedes that date.  Plaintiff has not presented any evidence why she was

6   unable to work during the period when she is not alleging disability.

7        The ALJ also discounted plaintiff's credibility because her daily activities – including caring for

8   her three children and regularly shopping, cooking, cleaning, and performing housework – suggested "that

9   she would prove able to perform work activity on a regular basis." Tr. 23-24.  To determine whether a

10  claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80

11  F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or

12  her day performing household chores or other activities that are transferable to a work setting." Id. at 1284

13  n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and

14  "many home activities may not be easily transferable to a work environment." Id.

15       Plaintiff argues this is not a valid basis for discounting her credibility, because the activities which

16  the ALJ listed are not inconsistent with her claimed limitations.  This is true with respect to her allegations

17  of difficulties with social functioning, such as being around other people, becoming aggravated by them

18  and acting out physically and verbally. See Tr. 71.  That is, cooking and performing other household

19  chores and taking care of one's own children, are not necessarily inconsistent with a claimed inability or

20  severely restricted ability to be around or interact with others.  On the other hand, plaintiff also has alleged

21  that she has difficulty in focusing and with concentration. See Tr. 96.  As discussed above, however, the

22  ALJ did not err in rejecting Dr. Clem's more severe findings regarding concentration, persistence and pace

23  in part because of the above activities of daily living.  Thus, the undersigned finds that at least with respect

24  to that claimed limitation, the ALJ did not err in discounting plaintiff's credibility for this reason.

25       The ALJ further discounted plaintiff's credibility because she reported in late February 2002, that

26  she had applied for work. Tr. 24, 271.  Plaintiff argues this does not undermine her credibility, because a

27  desire to return to work does not mean that goal is attainable or negate the alleged disability.  However, the

28  issue here is plaintiff's credibility, not whether applying for work is itself proof of an ability to obtain or

1  maintain employment.  Here, plaintiff reported that she had "applied for a job recently," stating further that

2  she did "not want to be on welfare any longer than necessary." Tr. 271.  While that desire certainly is to be

3  lauded, and although plaintiff also stated that she was "apprehensive about working with the public, as

4  well as leaving her children" (Id.), the above self-report does indicate that she felt she had at least some

5  ability to work or that she was not as disabled as she has claimed during the relevant time period.

6  The ALJ discounted plaintiff's credibility as well because Dr. Gutierrez noted "that medication had

7  improved" her "condition 40%." Tr. 24, 179.  The ALJ may discount a claimant's credibility on the basis

8  of medical improvement.  See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

9  1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff argues Dr. Olson testified that her

10  symptoms were "likely to wax and wane" (Tr. 366), and asserts that occasional periods of improvement do

11  not undermine her credibility.  While Dr. Olson may have testified that plaintiff's symptoms would likely

12  wax and wane, he never found them to be as severe as she has alleged them to be.  In addition, the weight

13  of the medical evidence in the record shows that, while there have been periods of some increase in her

14  symptoms, the progression over time overall has indicated improvement.  See, e.g., Tr. 179-84, 186, 194,

15  200, 206, 208, 210, 212, 214, 218, 223, 227-28, 230, 236, 239, 241-42, 245, 247, 264, 268-69, 271-72,

16  275, 293-95, 302, 305-06.

17  III.  The ALJ Did Not Err in Evaluating the Lay Witness Evidence in the Record

18  Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

19  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

20  each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  An ALJ may discount lay

21  testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

22  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In

23  rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons"

24  for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to

25  those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ

26  also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

27  The record contains a report from plaintiff's friend, LaDonna Henderson, relaying her observations

28  of plaintiff's symptoms and limitations. Tr. 120-26.  With respect to that report, the ALJ found as follows:

1
2
3
4

> . . . Ms. Henderson described periods where the claimant failed to leave her home or bed and experienced symptoms of shakiness and dizziness.  She characterized the claimant as anxious and depressed since her teenage years and as uncomfortable with most men. . . . The . . . allegations . . . of Ms. Henderson have been considered.  However, the claimant's daily activities which include caring for three children and regularly shopping, cooking, cleaning, and performing housework, suggest that she would prove able to perform work activity on a regular basis. . . .

5   Tr. 23.  Plaintiff argues her ability to perform sporadic activities interspersed with isolating herself in her

6   room and sleeping is not inconsistent with any of Ms. Henderson's observations.  However, as discussed

7   above, plaintiff reported a greater level of participation in activities of daily living to Dr. Clem than is now

8   being alleged.  As with plaintiff's current claims, that level of activity is inconsistent with Ms.

9   Henderson's statement that plaintiff does not leave her room or bed at home.  See Tr. 121.  Indeed,

10  although the ALJ found Ms. Henderson had described "periods" when this occurred, her actual statement

11  contained no such time limitation.  See id.  Such inconsistency is certainly germane to Ms. Henderson.

12  IV.    The ALJ's Assesssment of Plaintiff's Residual Functional Capacity

13         If a disability determination "cannot be made on the basis of medical factors alone at step three of

14  the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

15  assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

16  claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or

17  she can do his or her past relevant work, and at step five to determine whether he or she can do other work.

18  Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

19         A claimant's residual functional capacity is the maximum amount of work the claimant is able to

20  perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

21  must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only

22  those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

23  claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional

24  limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other

25  evidence." Id. at *7.

26         The ALJ assessed plaintiff with the following residual functional capacity:

27
28

> . . . [T]he claimant has the residual functional capacity to perform work activity at all exertional levels.  Because of the potential effects of her medications she should not climb ropes, ladders, or scaffolds, or work around heights or hazards.  She is limited to simple and repetitive work that is non-public.  She must work in an environment where

1   there is limited contact with coworkers and where she essentially works alone.

2   Tr. 22-23.  Plaintiff argues the ALJ erred here by not determining specifically whether the claimant was

3   capable of working on a regular and continuing basis for eight hours a day, five days a week.  "Ordinarily,

4   RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work

5   setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent

6   work schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original).  The RFC assessment itself "must

7   include a discussion of the individual's abilities on that basis." Id. (emphasis added).

8       Citing to two Fifth Circuit cases, Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2003), and Perez v.

9   Barnhart, 415 F.3d 457 (5th Cir. 2005), defendant argues the ALJ need not make a specific finding as to a

10  claimant's ability to sustain employment, but rather such a finding may be subsumed within the residual

11  functional capacity assessment itself.  In Frank, because nothing in the record suggested that the claimant

12  was unable to work on a sustained basis, the ALJ was not required to make an express determination as to

13  whether work could be maintained on such a basis. 326 F.3d at 621.  The Fifth Circuit accordingly rejected

14  the claimant's argument that separate findings must be made "on 'obtaining' and 'maintaining' a job in

15  every case, even cases in which the applicant does not suggest that there is any difference between the

16  issue of his ability to work and his ability to sustain work." Id.; see also Perez, 415 F.3d at 466 (claimant

17  failed to offer any evidence that his condition waxed and waned in intensity such that his ability to

18  maintain work was not adequately taken into account in his RFC determination).

19      Plaintiff responds by pointing to Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998), in which the

20  Ninth Circuit stated that "[b]ecause the ALJ's evaluation of residual functional capacity failed to address

21  [the] claimant's ability to undertake sustained work activity, his analysis did not comport with the Social

22  Security Administration's regulatory requirements." Id. at 724.  The issue in Reddick, however, was not

23  whether the ALJ was required to make an express finding that the claimant could work on a regular and

24  continuing basis pursuant to SSR 96-8p, but whether the ALJ appropriately took into account the effects

25  caused by plaintiff's chronic fatigue syndrome on her ability to sustain work.  That is, the ALJ failed to

26  properly address in assessing the claimant's RFC all of the medical evidence in the record regarding that

27  impairment.  That is entirely different from the issue here.

28      Nevertheless, the undersigned does find that in this case the ALJ should have determined whether

plaintiff was capable of working on a regular and continuing basis.  Adopting the approach taken by the Fifth Circuit in <u>Frank</u> and <u>Perez</u>, the undersigned finds that because there is evidence in the record plaintiff may not be able to perform full-time work – or work performed for eight hours a day, for five days a week – this issue should have been addressed.  For example, as noted above, Ms. Varney felt it would be okay for plaintiff to engage in "no more that P/T [part-time] coached work."  Tr. 211.  In addition, again though not conclusive, the statements made by Dr. Gutierrez also suggests he may have believed plaintiff to not be capable of full-time work, at least at that time.  <u>See</u> Tr. 196.  While, as discussed above, this evidence does not necessarily establish these two medical sources thought plaintiff was incapable of doing no more than part-time work, at the very least there is a question as to whether in fact that is the case.

Plaintiff next argues that although the ALJ adopted the testimony of Dr. Olson, the medical expert, the ALJ did not include in the RFC assessment Dr. Olson's limitation that she be restricted to a "low stress . . . environment where she is not interacting with other people."  Tr. 364.  Dr. Olson's complete testimony on this particular subject reads as follows:

> . . . . If she is going to be in the workplace, I think it would have to be in a low stress, you know, environment where she is not interacting with other people, and, you know. Where there isn't the potential for conflict with other people and so forth and, you know, the demands of the job are not multi-tasking type demands but rather simple.

<u>Id.</u>  The undersigned, however, finds the ALJ's RFC assessment adequately accounts for these limitations.  As noted above, the ALJ restricted plaintiff to "simple and repetitive work that is non-public" and "where she essentially works alone."  Tr. 23.  The stress Dr. Olson was referring to above, was the stress of having to do exactly the opposite of what the ALJ found her capable of doing, that is, working with other people in the performance of more "multi-tasking type" – i.e., more than simple – job activities.

Plaintiff further argues the ALJ failed to consider all of the lay witness and medical opinion source evidence in the record here, because he properly rejected that evidence.  As discussed above, however, the ALJ did not err in discounting the credibility of the lay witness evidence in the record.  Also as discussed above, the ALJ properly rejected the opinion of Dr. Clem as well.  On the other hand, as previously noted, the ALJ did err in failing to consider the statements made by Dr. Gutierrez and Ms. Varney.  Accordingly, for this reason, it is not clear the ALJ's residual functional capacity assessment accurately encompasses all of plaintiff's limitations.

On the other hand, the undersigned disagrees with plaintiff that the ALJ erred in not assigning any

limitations due to her obesity, even though she isolates and sleeps a lot.  Plaintiff argues that SSR 02-1p

recognizes that in obesity cases, fatigue may affect one's physical and mental ability to sustain work, and

that sleep apnea, which she was suspected as having, is an impairment common to obese individuals.  See

2000 WL 628049 *6; Tr. 294.  The undersigned finds no error here.  First, although the record does

contain diagnoses of obesity and the ALJ found this to be a severe impairment, the objective medical

evidence in the record fails to reveal any specific, let alone significant, symptoms linked thereto.  Thus,

while certainly both fatigue and sleep apnea may be common among individuals who are obese, once

more, plaintiff points to no medical evidence in the record that her obesity has caused her to actually

experience either symptom, or again that those symptoms have produced more than minimal work-related

limitations.

Lastly, plaintiff argues the ALJ erred in failing to include in her RFC assessment the moderate

limitations in concentration, persistence and pace that Dr. Olson and the non-examining state agency

physicians, including Dr. Comrie, found her to have, despite determining those limitations to have been

consistent with the medical and other evidence in the record as a whole.  Defendant argues the restriction

to simple work found by the ALJ adequately sufficiently accommodates the limitations opined by Drs.

Olson and the state agency physicians.  However, it is not at all clear that a restriction to simple work does

so.  For example, the evaluation form completed by Dr. Comrie makes a clear distinction between the

ability to understand, remember and carry out simple instructions and the ability to maintain attention and

concentration and to perform at a consistent pace.  See Tr. 159-60.

Defendant further argues the state agency physicians found plaintiff to be capable of maintaining

attention and concentration "for up to 2 hours at a time" in the "functional capacity assessment" section of

the evaluation form they completed.  See Tr. 161.  Citing to the Program Operations Manual System

("POMS"), an internal Social Security Administration document, defendant asserts this section of the

evaluation form serves to explain the boxes checked in "summary conclusions" section thereof, and thus is

what the ALJ is to use in assessing a claimant's RFC.  It is true that the Ninth Circuit has recognized the

POMS as "persuasive authority," even though it "does not have the force of law." Warre v. Commissioner

of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).  Nevertheless, it is not entirely clear that the

narrative statements contained in the functional capacity assessment section of the evaluation form are to

1   be adopted to the complete exclusion of the findings contained in the summary conclusions form, rather

2   than to be read merely as an explanation thereof.  In any event, the ALJ did not make clear that this is what

3   he was doing, and so remand for clarification of this is required.

4   V.      The ALJ's Step Five Anlaysis

5       If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

6   process the ALJ must show there are a significant number of jobs in the national economy the claimant is

7   able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), §

8   416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the

9   Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock

10  v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

11      An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

12  posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

13  1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

14  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

15  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported

16  by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from

17  that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th

18  Cir. 2001).

19      At the hearing, the ALJ posed a hypothetical to the vocational expert that included substantially

20  similar limitations to those contained in the assessment of plaintiff's residual functional capacity. Tr. 376-

21  77.  In response to that hypothetical, the vocational expert testified that there were other jobs that plaintiff

22  could do, namely a telephone directory delivery person, a delivery driver and a laundry worker. Tr. 26,

23  377-78.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing

24  other jobs existing in significant numbers in the national economy. Tr. 26.  Plaintiff argues the

25  hypothetical was defective, because it was based on the ALJ's assessment of her RFC, which failed to

26  accurately reflect all of her limitations.  Because the ALJ erred in assessing plaintiff's residual functional

27  capacity for the reasons set forth above, the undersigned agrees that it is not clear the hypothetical the ALJ

28  posed to the vocational expert was entirely accurate as well.

The undersigned disagrees, however, with plaintiff's assertion that her impairments necessarily preclude her from performing the driver jobs identified by the vocational expert.  Specifically, plaintiff points to the vocational expert's testimony that a person who engages in road rage would have difficulties performing the job of a driver, and that a lot of the driver jobs do not generate income at substantial gainful activity levels.  However, evidence of plaintiff having road rage comes from her own testimony. See Tr. 379.  The ALJ though properly discounted her credibility for the reasons discussed above, and thus was not required to adopt any limitations allegedly stemming therefrom.  In addition, as pointed out by defendant, the vocational expert merely testified that a lot of the delivery driver jobs were not full-time employment, and not that those jobs failed to generate income constituting substantial gainful activity. See Tr. 380.  Finally, while plaintiff asserts that the need for a quiet environment and an inability to work around others logically would preclude the laundry worker job, she points to no vocational expert testimony or other evidence in the record to support that assertion.

VI.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain with respect to the medical evidence in the record, plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 18, 2008**, as noted in the caption.

DATED this 26th day of June, 2008.


Karen L. Strombom
United States Magistrate Judge